1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

HAURY'S AUTO BODY, INC. d/b/a
HAURY'S LAKE CITY COLLISION;
PARAMOUNT CENTRE, INC.; EUROTECH
BODYWERKES, INC.; COLLISION
MASTERS, LLC; PROSTAR COLLISION,
LLC; CENTER COLLISION, LLC;
ACCURATE AUTO BODY, INC.,

                    Plaintiffs,

          v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY; STATE FARM
FIRE & CASUALTY COMPANY;
FARMERS INSURANCE COMPANY OF
WASHINGTON; GEICO GENERAL
INSURANCE COMPANY; GEICO
INDEMNITY COMPANY; GOVERNMENT
EMPLOYEES INSURANCE COMPANY;
ALLSTATE INSURANCE COMPANY;
ALLSTATE FIRE & CASUALTY
INSURANCE COMPANY; ALLSTATE
PROPERTY AND CASUALTY
INSURANCE COMPANY; SAFECO
INSURANCE COMPANY OF ILLINOIS;
SAFECO INSURANCE COMPANY OF
OREGON; FIRST NATIONAL INSURANCE
COMPANY OF AMERICA; LIBERTY
MUTUAL FIRE INSURANCE COMPANY;
USAA CASUALTY INSURANCE

Case No.


**COMPLAINT**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

COMPANY; USAA GENERAL
INDEMNITY COMPANY; UNITED
SERVICES AUTOMOBILE ASSOCIATION;
GARRISON PROPERTY AND CASUALTY
INSURANCE COMPANY; PROGRESSIVE
CASUALTY INSURANCE COMPANY;
PROGRESSIVE CLASSIC INSURANCE
COMPANY ; PROGRESSIVE DIRECT
INSURANCE COMPANY; PROGRESSIVE
MAX INSURANCE COMPANY;
AMERICAN FAMILY MUTUAL
INSURANCE COMPANY; HARTFORD
UNDERWRITERS INSURANCE
COMPANY; HARTFORD CASUALTY
INSURANCE COMPANY; PROPERTY
AND CASUALTY INSURANCE COMPANY
OF HARTFORD; UNITRIN AUTO & HOME
INSURANCE COMPANY, insurance
companies,

Defendants.

The plaintiffs by and through their attorneys of record, OLIVE|BEARB, GRELISH & GILBERT PLLC, allege as follows:

## I. JURISDICTION

1.1     The above-captioned court has jurisdiction over the parties and subject matter of this lawsuit under 28 U.S.C. § 1331 as the claims alleged herein arise under the laws of the United States.  This court has supplemental jurisdiction under 28 U.S.C. 1367(a) over the state law claims alleged herein arising out of the same controversy.

## II. VENUE

2.1     The above-entitled court is proper venue for this action under 28 U.S.C § 1392(b)(2) as it is the judicial district in which a substantial portion of the events or omissions giving rise the claims alleged herein occurred.

## III. IDENTIFICATION OF PLAINTIFFS

COMPLAINT —Page 2 of 31

3.1    At all times material hereto, Plaintiffs were businesses operating in Washington.

3.2    Plaintiff HAURY'S AUTO BODY, INC. d/b/a HAURY'S LAKE CITY COLLISION is a Washington State corporation doing business at 11514 LAKE CITY WAY NE in Seattle, Washington;

3.3    Plaintiff PARAMOUNT CENTRE, INC. is a Washington State corporation doing business at 6005 12TH St. E in Fife, Washington;

3.4    Plaintiff EUROTECH BODYWERKES, INC. is a Washington State corporation doing business at 13209 NE 126th Pl., #A140 in Kirkland, Washington;

3.5    Plaintiff COLLISION MASTERS, LLC is a Washington State limited liability company doing business at 13635 NE 126th Pl., #200 in Kirkland, Washington;

3.6    Plaintiff PROSTAR COLLISION, LLC is a Washington State limited liability company doing business at 303 N Wenas St. in Ellensburg, Washington;

3.7    Plaintiff CENTER COLLISION, LLC is a Washington State limited liability company doing business at 1111 Center St. in Tacoma, Washington.

3.8    Plaintiff ACCURATE AUTO BODY, INC. is a Washington State corporation doing business at 7662 159th Pl NE in Redmond, Washington.

## IV. IDENTIFICATION OF DEFENDANTS

4.1    STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered address is ONE STATE FARM PLAZA, BLOOMINGTON, IL 61710-0001, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.2    STATE FARM FIRE & CASUALTY COMPANY is an insurance company

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
P: (206) 629-9909
F: (206) 971-5081

properly licensed and doing business in the State of Washington whose registered address is ONE STATE FARM PLAZA, BLOOMINGTON, IL 61710-0001, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.3     FARMERS INSURANCE COMPANY OF WASHINGTON is an insurance company properly licensed and doing business in the State of Washington whose registered address is located at 3003 - 77TH AVE SE, MERCER ISLAND, WA 98040-2890.

4.4     GEICO GENERAL INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered address is 5260 WESTERN AVE, CHEVY CHASE, MD 20815, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.5     GEICO INDEMNITY COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered address is 5260 WESTERN AVE, CHEVY CHASE, MD 20815, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.6     GOVERNMENT EMPLOYEES INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered address is 5260 WESTERN AVE, CHEVY CHASE, MD 20815, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.7     ALLSTATE INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered address is ALLSTATE PLAZA NORTH E-5, NORTHBROOK, IL 60062, and may be served through Washington

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.8     ALLSTATE FIRE & CASUALTY INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered address is 2775 SANDERS RD, NORTHBROOK, IL 60062, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.9     ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered address is ALLSTATE PLAZA, NORTHBROOK, IL 60062 and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.10    SAFECO INSURANCE COMPANY OF ILLINOIS is an insurance company properly licensed and doing business in the State of Washington whose registered address is 27201 BELLA VISTA PARKWAY, SUITE 130, WARRENVILLE, IL 60555, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.11    SAFECO INSURANCE COMPANY OF OREGON is an insurance company properly licensed and doing business in the State of Washington whose registered address is 650 NE HOLLADAY ST, ONE LIBERTY CENTRE, PORTLAND, OR 97232, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.12    FIRST NATIONAL INSURANCE COMPANY OF AMERICA is an insurance company properly licensed and doing business in the State of Washington whose registered

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
P: (206) 629-9909
F: (206) 971-5081

agent is located at 62 MAPLE AVE, KEENE, NH 03431, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.13    LIBERTY MUTUAL FIRE INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered agent is located at 2000 WESTWOOD DR, WAUSAU, WI 54401, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.14    USAA CASUALTY INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered agent is located at 9800 FREDERICKSBURG RD SAN ANTONIO, TX 78288, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.15    USAA GENERAL INDEMNITY COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered agent is located at 9800 FREDERICKSBURG RD SAN ANTONIO, TX 78288, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.16    UNITED SERVICES AUTOMOBILE ASSOCIATION is an insurance company properly licensed and doing business in the State of Washington whose registered agent is located at 9800 FREDERICKSBURG RD SAN ANTONIO, TX 78288, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

4.17    GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered agent is located at 9800 FREDERICKSBURG RD SAN ANTONIO, TX 78288, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.18    PROGRESSIVE CASUALTY INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered agent is located at 6300 WILSON MILLS RD MAYFIELD VILLAGE, OH 44143, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.19    PROGRESSIVE CLASSIC INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered agent is located at 8020 EXCELSIOR DR SUITE 200 MADISON, WI 53717, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.20    PROGRESSIVE DIRECT INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered agent is located at 6300 WILSON MILLS RD MAYFIELD VILLAGE, OH 44143-2182, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.21    PROGRESSIVE MAX INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered address is 6300 WILSON MILLS RD W33, MAYFIELD VILLAGE, OH 44143-2182, and may be served

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.22    AMERICAN FAMILY MUTUAL INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered address is 6000 AMERICAN PARKWAY, MADISON, WI 53783-0001, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.23    HARTFORD UNDERWRITERS INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered address is 1 HARTFORD PLAZA HO-1-19-2, HARTFORD, CT 06115, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.24    HARTFORD CASUALTY INSURANCE COMPANY is an insurance company properly licensed and doing business in the State of Washington whose registered address is 501 Pennsylvania Parkway Ste 400, INDIANAPOLIS, IN 46280-0014, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.25    PROPERTY AND CASUALTY INSURANCE COMPANY OF HARTFORD is an insurance company properly licensed and doing business in the State of Washington whose registered address is 501 PENNSYLVANIA PARKWAY SUITE 400, INDIANAPOLIS, IN 46280-0014, and may be served through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and RCW 48.02.200.

4.26    UNITRIN AUTO & HOME INSURANCE COMPANY is an insurance

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

company properly licensed and doing business in the State of Washington whose registered

agent is located at 5784 WIDEWATERS PARKWAY DEWITT, NY 13214, and may be served

through Washington State Office of the Insurance Commissioner under RCW 48.05.200 and

RCW 48.02.200.

## V. FACTS

5.1     Plaintiffs re-allege paragraphs 1.1 through 4.26 as if set forth fully herein.

5.2     Each individual Plaintiff is in the business of recovery and/or repair of motor

vehicles involved in collisions.

5.3     Each individual Defendant is an insurer providing automobile policies to

consumers throughout the State of Washington.

5.4     Each individual Plaintiff has done business at various times over the course of

years with the Defendants' policyholders and claimants by providing to these policyholders and

claimants motor vehicle collision repair service. Each Defendant is individually responsible for

payment for those repairs for their respective policyholders and claimants.

5.5     Over the course of several years, the Defendants have engaged in an ongoing,

concerted and intentional course of action and conduct with State Farm acting as the spearhead

to improperly and illegally control and depress automobile damage repair costs to the detriment

of the Plaintiffs and the substantial profit of the Defendants.

5.6     One of the methods by which the Defendants exert control over body shops is by

way of entering program agreements with the body shops. Although each Defendant's program

agreements have unique titles, such agreements are known generally and generically within the

collision repair industry as direct repair program agreements ("DRPs"). DRP programs also

have the affect of allowing Defendants to exert control over non-DRP shops, including certain

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

1    Plaintiffs.

2    5.7     DRPs were presented to body shops as a mutually beneficial opportunity. In

3    exchange for providing certain concessions of price, priority and similar matters, the individual

4    Defendants would list the body shop as a preferred provider.

5    5.8     However, the concessions demanded by the individual Defendants in exchange

6    for remaining on the direct repair program were not balanced by the purported benefits. The

7    Defendants, particularly State Farm, have utilized these agreements to exert control over DRP

8    shops in a variety of manners, well beyond that of an ordinary business agreement, and

9    Defendants have exerted control over non-participating shops such as the non-DRP Plaintiffs'

10   businesses by, for example, paying those shops the same as the DRP shops regardless of the

11   lack of agreement.

12   5.9     Defendants, particularly State Farm, have engaged in an ongoing pattern and

13   practice of coercion and implied threats to the pecuniary health of the individual Plaintiff

14   businesses in order to force compliance with unreasonable and onerous concessions and/or to

15   punish the non-DRP Plaintiffs for not participating. Failure to comply, or non-participation,

16   results in either removal from the program(s), improper "steering" of customers away from the

17   Plaintiff's business, and/or simply punishment to decrease the number of customers utilizing the

18   Plaintiffs services.

19   5.10    According to the Washington State Office of Insurance Commissioner, 2012

20   Washington Market Share and Loss Ratio, Market Share Report, as of December 31, 2012,

21   State Farm has captured 13.43% of the private passenger automobile insurance business within

22   the market area of the state of Washington. The market share for its closest competitor, Farmers

23   Insurance Company of Washington, is 56% of State Farm's market share at 7.51%. The next

**OLIVE|BEARB, GRELISH & GILBERT PLLC**
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

closest competitor, PEMCO Mutual Insurance Company, holds 47% of the market share of State Farm, 6.25%. *See* 2012 Washington Market Share and Loss Ratio, Market Share Report attached as **Exhibit 1**.

5.11    Of the remaining 172 companies which report earning premiums within the market area of the State of Washington for private passenger automobile physical damage insurance, the average market share for each is 0.42% *See* 2012 Washington Market Share and Loss Ratio, Market Share Report attached as **Exhibit 1**.

5.12    Based upon the most recent information available, it is clearly apparent State Farm holds the unchallenged dominant position within the automobile insurance industry in the Washington market.

5.13    Collectively, the Defendants control over 70% of the market within the State of Washington.

5.14    The vast majority of the Plaintiffs' business is generated by customers for whom the Defendants are responsible to pay repair costs. The insurance-paying customers account for between seventy and ninety-five percent of each shop's revenue. Overall, courts have acknowledged the significant role played by insurance companies in funding automobile collision repairs, as well as the ability and market power to exert substantial influence and control over where consumers will take a wrecked car for repairs. See, e.g., *Allstate Ins. Co.* v. *Abbott,* 2006 U.S. Dist. LEXIS 9342 (N.D. Tex. 2006)(affd, *Allstate Ins. Co.* v. *Abbott,* 2007 U.S. App. LEXIS 18336 (5th Cir. 2007).

5.15    As a general proposition, each DRP contains a general statement that the body shop will charge the respective insurance company no more for any particular repair than is the going rate in the market area.

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

5.16    In order to establish the "market rate," State Farm utilizes what it terms "surveys." The geographical boundaries of the market area to be "surveyed" to establish the "market rate" are wholly within the control and direction of State Farm.

5.17    Under the terms of its DRP, State Farm is not required to disclose any of the methods by which it establishes either the market area, the market rate, nor any other factual bases for its determination of the "market rate." The agreement contains no provisions for independent and neutral verification of the data utilized, nor any oversight not directly within the control and direction of State Farm. The shops are simply required to blindly accept State Farm's pronouncements regarding these matters.

5.18    Previously this "survey" was conducted by sending written documents to the individual shops. The owner or designated representative of the shop would fill out the survey and return it to State Farm. In recent years, this process has been transferred to an electronic forum, State Farm's Business to Business portal, whereby the shops go online to complete the "survey."

5.19    State Farm does not perform a survey in the traditional sense, where information is obtained and results produced, establishing a baseline of all the shops' information. With respect to labor rates, as an example, State Farm's methodology does not represent what the majority of shops in a given area charge, quite the contrary. State Farm's methodology lists the shops in a given market (as determined by State Farm) with the highest rates submitted at the top of the list and descending to the least expensive hourly rates at the bottom.

5.20    State Farm then lists how many technicians a shop employs or the number of work bays available, whichever is lesser. Those are then totaled and State Farm employs its "half plus one" method. If, for example, a State Farm determined market area has a total of fifty

COMPLAINT —Page 12 of 31

(50) technicians or work bays, State Farm's "half plus one" math equals twenty-six (26). With that number, starting at the bottom of the shop list, State Farm counts each shops technicians until the "half plus one" number is reached, twenty six in this example, and whatever that shop's rate happens to be is declared the market rate.

5.21    There could, arguably, be some validity to this method, if it accounted for the variance in shop size, skill of technicians and other quality variables, which it does not. However, the greatest problem with this method is that State Farm can and does alter the labor rates input by the shops, decreasing those arbitrarily deemed too high-or higher than State Farm wishes to pay.

5.22    By altering the rates entered, particularly those of the larger shops, those with the most technicians and/or work bays, State Farm manipulates the results to achieve a wholly artificial "market rate." The results are therefore not that of an actual survey reflecting the designated market area but created from whole cloth by State Farm.

5.23    Furthermore, State Farm attempts to prohibit the shops from discussing with each other the information each has entered into the survey, asserting any discussion may constitute illegal price fixing. State Farm selects the geographical boundaries of the "survey," and State Farm retains the right to alter the "survey" results and does so. All without disclosure or oversight.

5.24    Another electronic page on State Farm's business portal is known as the Dashboard/Scorecard. An example of State Farm's Dashboard is attached for descriptive purposes as **Exhibit 2**.

5.25    The Dashboard has substantive impact on several levels. It serves as the record of an individual shop's survey responses. It also provides a "report card" and rating of the

COMPLAINT —Page 13 of 31

individual shop based primarily upon three criteria: quality, efficiency and competitiveness.

5.26    Within the quality criterion, the shop's reported customer satisfaction, customer complaints, and quality issues identified by an audit are scored.

5.27    The efficiency criterion evaluates repair cycle time, number of days a vehicle is in the shop, utilizing information input by the shops on the car's drop-off and pickup dates.

5.28    The competitiveness criterion analyzes the average estimate for each State Farm repair, the cost of parts, whether a vehicle is repaired or replacement parts are utilized, the number of hours required to complete repair and similar matters. An example of a State Farm score card is included within **Exhibit 2**, second page.

5.29    In rating an individual shop, a total score of 1000 is possible. However, State Farm is under no obligation to disclose the weight or total number of points possible given to each factor included in reaching the score, particularly those factors included under the competitiveness criterion. In fact, State Farm has refused to disclose its method of determining competitiveness even to its own team leaders.

5.30    Due to this opacity, State Farm maintains complete and unsupervised authority to determine an individual shop's rating. It is therefore possible for a shop to have no customer complaints, high customer satisfaction, no issues identified on an audit, complete compliance with all repair cycle time and efficiency requirements and yet still have a low rating. It is also possible for a shop to have multiple customer complaints, poor customer satisfaction, numerous issues identified on audit, inability or incompetency to meet expectations and yet have a very high rating.

5.31    The Dashboard rating is very important as a shop's rating determines its position on the list of preferred providers. When a customer logs on to the State Farm web site seeking a

COMPLAINT —Page 14 of 31

repair shop, those shops with the highest ratings are displayed first. A shop with a low rating will be at the bottom of the list, often pages and pages down, making it difficult for a potential customer to find it. If a customer calls State Farm, the representative provides the preferred shops beginning with those holding the highest rating.

5.32    Among the questions asked by the "survey" is the individual shop's hourly labor rate. This information is supposed to be provided by the shop and to accurately reflect that shop's labor rate to allow State Farm to reach a "market rate." The actual method of determining a "market rate" is described above.

5.33    If the labor rate information received is unilaterally deemed unacceptable by State Farm, a State Farm representative will contact the shop and demand the labor rate be lowered to an amount State Farm wishes to pay.

5.34    If the body shop advises a labor rate increase is required, State Farm representatives will inform the body shop they are the only shop in the area that has raised its rates, therefore the higher rate does not conform with the "market rate" and is thus a violation of the direct repair program agreement.

5.35    At various points in time, State Farm has utilized this method of depressing labor rates, telling each shop they are the only one to demand a higher labor rate when, in fact, multiple shops have attempted to raise their labor rates and advised State Farm of such.

5.36    Should a shop persist in its efforts to raise its labor rate, State Farm will take one or more of several "corrective" measures: it will go into the individual shop's survey responses and alter the labor rate listed without the knowledge or consent of the shop and use this lowered rate to justify its determination of the "market rate." It will threaten to remove the shop from the direct repair program to coerce compliance. It will remove the shop from the direct repair

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

program.

5.37    The net effect of this tactic is to allow State Farm to manipulate the "market rate" and artificially suppress the labor rate for the relevant geographic area, an area which, again, is defined solely by State Farm and is not subject to either neutral verification or even disclosure.

5.38    The remaining Defendants, intentionally and by agreement and/or conscious parallel behavior, specifically advised the Plaintiffs they will pay no more than State Farm pays for labor. These Defendants have not conducted any surveys of their own in which the Plaintiffs have participated to determine market rates. These Defendants have agreed to join forces with State Farm, the dominant market holder, and each other to coerce the Plaintiffs into accepting the artificially created less-than-market labor rates through intimidation and threats to the Plaintiffs financial ability to remain operating.

5.39    Through various methods, the Defendants have, independently and in concert, instituted numerous methods of coercing the Plaintiffs into accepting less than actual and/or market costs for materials and supplies expended in completing repairs.

5.40    Some of these methods include but are not limited to: refusal to compensate the shops for replacement parts when repair is possible though strongly not recommended based upon the shop's professional opinion; utilizing used and/or recycled parts rather than new parts, even when new parts are available and a new part would be the best and highest quality repair to the vehicle; requiring discounts and/or concessions be provided, even when doing so requires the shop to operate at a loss; de facto compulsory utilization of parts procurement programs.

5.41    In addition to the above, the Defendants have repeatedly and intentionally failed to abide by industry standards for auto repairs. Three leading collision repair estimating

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

databases are in ordinary usage within the auto body collision repair industry:

       a) ADP;

       b) CCC; and

       c) Mitchell

     5.42   These databases provide software and average costs associated with particularized types of repairs to create estimates. The estimates generated by these databases include the ordinary and customary repairs, repair time (labor) and materials necessary to return a vehicle to its pre-accident condition. These databases and the estimates they generate are accepted within the industry as reliable starting points, subject to the shop's expert opinions and the necessarily present variability between the "best-case scenario" presented by the procedure databases and the actual needs of a particular repair.

     5.43   Over the course of years, the Defendants have admitted the accepted position of the estimating databases within the industry, but have nonetheless engaged in a course of conduct of refusing to make full payment for procedures and materials. In many instances the Defendants will refuse to allow the body shop to perform required procedures and processes, thereby requiring the Plaintiffs to perform less-than-quality work or suffer a financial loss.

     5.44   A non-exhaustive list of procedures and processes the Defendants refuse to pay and/or pay in full is attached hereto as **Exhibit 3**.

     5.45   At the same time, Defendants selectively rely upon and assert the definitive nature of these databases when doing so is to their respective financial advantage. For example, when a particular repair requires twenty hours of labor to complete but the database estimate notes fifteen hours of labor is standard for that type of repair, Defendant will cite the database estimate and pay for only fifteen hours of labor time.

OLIVE|BEARB, GRESLISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

5.46    With respect to materials, while it is inarguable that materials must be expended to repair automobile collisions, the Defendants simply refuse to pay for them, asserting materials are part of the cost of doing business. This is the Defendants' position even when the authoritative databases specifically state that such materials are not included in the repair procedure pages.

5.47    The only partial exception to this practice is paint. While paint costs are factored into the amount the Defendants will pay, it is calculated via a formula which compensates the shops for only half the actual cost on average. The Defendants' method of calculating paint payment does not take into account the type of paint needed/used, the requirement that paint be mixed to match the existing color of the vehicle, the actual amount of paint required to complete the job, the type of vehicle involved or any other factor. Defendants pay only based upon arbitrary caps, self-established and unrelated to actual costs to the Plaintiffs.

5.48    This continued refusal and/or failure to compensate Plaintiffs for ordinary and customary repairs and materials costs places Plaintiffs in the untenable position of either performing incomplete and/or substandard repairs and thus breaching their obligation to automobile owners to return vehicles to pre-accident condition, or performing labor and expending materials without proper compensation and thereby jeopardizing continuing viability of the business enterprise.

5.49    Defendant State Farm also imposes restrictions upon the Plaintiffs' ability to obtain and utilize quality replacement parts and materials. As part of its DRP agreement, State Farm asserts it has the unilateral authority to enter into separate agreements with manufacturers, distributors or suppliers of automotive parts, supplies or materials.

5.50    Despite the fact that the shops have no involvement in the negotiation of those

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

separate agreements, they are de facto required to abide by the pricing agreements reached, even if they do not make purchases with those vendors. Although presented as an option to participate, the optional language is rendered nugatory by additional language which requires the shops to accept as payment only that amount for which the parts and/or materials could have been obtained through those agreements. Participation or lack thereof is therefore completely meaningless and the optional language is illusory.

5.51    Moreover, shops are required to "stack" this purportedly optional usage of separate agreements with other discounts required elsewhere within the agreement. Thus, the limitation on payment, refusal to compensate for nearly all materials and the compelled discounts end in a shop operating at or near a loss for each repair.

5.52    Though led by State Farm as the dominant market shareholder, all Defendants have agreed to and/or consciously parallel the compensation ceilings established by State Farm solely for their own profit.

5.53    The Defendants regularly and routinely engage in "steering" in order to punish noncompliant shops. Washington law prohibits automobile insurance companies from requiring consumers to use particular body shops to effect repairs. In order to avoid facially violating this law, the Defendants will "steer" insureds and/or claimants to favored, compliant shops through misrepresentation, insinuation, and casting aspersions upon the business integrity and quality of disfavored repair centers.

5.54.    Examples of this practice include advising that a particular chosen shop is not on the preferred provider list, advising that quality issues have arisen with that particular shop, that complaints have been received about that particular shop from other consumers, that the shop charges more than any other shop in the area and these additional costs will have to be paid by

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

the consumer, that repairs at the disfavored shop will take much longer than at other, preferred shops and the consumer will be responsible for rental car fees beyond a certain date, and that the Defendant cannot guarantee the work of that shop as it can at other shops.

5.55    As another example, Defendants, including but not limited to, Allstate and Unitrin, have specifically steered or attempted to steer customers away from the Plaintiffs, including Haury's Lake City Collision. Defendants have made false and/or misleading statements about the plaintiffs intending to steer customers to other shops, such as: They won't agree with our appraiser or they will charge you more; We have had a hard time with that shop/We can't work with that shop; They are not on our preferred list; If you go to a non-preferred shop your repair will take longer; and If you go to our shop we can pay them directly and it will be faster, among other such statements meant to "steer" the insured to away from certain shops.

5.56    Defendants have made these and similar statements about certain Plaintiffs without any attempt to ascertain the truth thereof. Not only that, some of the ills recited that implicitly or explicitly criticize the shops are wholly attributable to the insurer itself. For instance, the statement that repairs will take longer at a disfavored shop-consumers are not told that the delay in beginning repairs is due to the insurer's decision to delay sending an appraiser to evaluate the damage, a decision completely and wholly within the control of the Defendants. Asserting the shops charge more is often not a function of what the shop actually charges but the Defendants' refusal to pay, also a factor wholly and completely within the control of the respective Defendant. Yet both are conveyed to the public as problems with the shop.

5.57.    The most egregious of these statements, that the Defendant cannot guarantee the work of the shop, is particularly misleading as none of the Defendants offer a guarantee for

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
P: (206) 629-9909
F: (206) 971-5081

repair work. Instead, the Defendants require the body shops to provide a limited lifetime guarantee on work performed. In the event additional work is required, the body shop is required to do so without any additional payment, or to indemnify the insurer for costs if work is performed at another shop.

5.58    Thus, while it may be a facially truthful statement that an insurer cannot guarantee the work of a particular shop, the clearly understood inference is that it can and will guarantee the work of another, favored shop, which is simply not true.

5.59    In 1963, a consent decree was entered in *United States vs. Association o/Casualty and Surety Companies,* et al, Docket No. 3106, upon complaint filed in the Southern District of New York. The allegations of that complaint included violations of Sections I and 3 of the Sherman Act, also known as the Sherman Antitrust Act. A copy of this Decree is attached hereto as **Exhibit 4**.

5.60.    Specific actions supporting those allegations included: (1) requiring repair rather than replacement of damaged parts; (2) replacing damaged parts with used rather than new parts; (3) obtaining discounts on new replacement parts; (4) establishing strict labor time allowances; (5) suppressing the hourly labor rate; (6) channeling auto repairs to those repair shops which would abide by the insurer estimates and boycotting those which refused. The complaint further alleged a conspiracy and combination in unreasonable restraint of trade and commerce for these practices.

5.61.    The Consent Decree order provided the following relief: (1) enjoined the defendants from placing into effect any plan, program or practice which has the purpose or effect of (a) directing, advising or otherwise suggesting that any person or firm do business or refuse to do business with any independent or dealer franchised automotive repair shop with

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

respect to the repair of damage to automobile vehicles; (2) exercising any control over the activities of any appraiser of damages to automotive vehicles; (3) fixing, establishing, maintaining or otherwise controlling the prices to be charged by independent or dealer franchised automotive repair shops for the repair of damage to automotive vehicles or for replacement parts or labor in connection therewith, whether by coercion, boycott or intimidation or by the use of flat rate or parts manuals or otherwise.

5.62.   Whether or not any current Defendant is legally bound by this Decree, the actions described in the present cause fall squarely within those prohibited by the Decree. The Decree has been "on the books" for fifty years and is well -known within the insurance industry.

5.63.   Being known, it can only be said that Defendants were fully aware their actions, plans, programs, and combinations and/or conspiracy to effectuate the same have been willful, intentional and conducted with complete and reckless disregard for the rights of the Plaintiffs.

## VI.   LEGAL CLAIMS

6.1   Plaintiffs re-allege paragraphs 1.1 through 5.63 as if set forth fully herein for each cause of action below.

### Violations Of The Sherman Antitrust Act-Price Fixing/Suppression of Repair and Labor Costs

6.2   Price fixing is an agreement among competitors to raise, lower, or otherwise stabilize the price range, or any other competitive term that will be offered for their products or services. Competitive terms that competitors may not agree to include anything from financing terms and warranties to discounts and shipping fees. What matters is whether there is an agreement, the effect of which is to directly or indirectly affect prices. Price fixing has long been recognized as per se illegal under the Sherman Act due its harmful effect on competition and consumers.

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

6.3     Price fixing is a per se violation of Section 1 of the Sherman Act.

6.4     Defendants' conduct has violated Section 1 of the Sherman Act in many ways, but particularly in the suppression of labor rates and suppression of material and labor costs.

6.5     By creating an unreasonable and bias "survey," Defendants are able to justify their preferential rate for labor, which they deem the "market rate."

### Violations of the Sherman Antitrust Act—Steering

6.6     The Defendants regularly and routinely engage in "steering" in order to punish noncompliant shops. Washington law prohibits automobile insurance companies from requiring consumers to use particular body shops to effect repairs. In order to avoid facially violating this law, the Defendants will "steer" insureds and/or claimants to favored, compliant shops through misrepresentation, insinuation, and casting aspersions upon the business integrity and quality of disfavored repair centers.

6.7     Examples of this practice include advising that a particular chosen shop is not on the preferred provider list, advising that quality issues have arisen with that particular shop, that complaints have been received about that particular shop from other consumers, that the shop charges more than any other shop in the area and these additional costs will have to be paid by the consumer, that repairs at the disfavored shop will take much longer than at other, preferred shops and the consumer will be responsible for rental car fees beyond a certain date, and that the Defendant cannot guarantee the work of that shop as it can at other shops.

6.8     These statements have been made about certain Plaintiffs without any attempt to ascertain the truth thereof. Not only that, some of the ills recited which implicitly or explicitly criticize the shops are wholly attributable to the insurer itself. For instance, the statement that repairs will take longer at a disfavored shop-consumers are not told that the delay in beginning

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

repairs is due to the insurer's decision to delay sending an appraiser to evaluate the damage, a decision completely and wholly within the control of the Defendants. Asserting the shops charges more is often not a function of what the shop actually charges but the Defendants' refusal to pay, also a factor wholly and completely within the control of the respective Defendant. Yet both are conveyed to the public as problems with the shop.

6.9     The most egregious of these statements, that the Defendant cannot guarantee the work of the shop, is particularly misleading as none of the Defendants offer a guarantee for repair work. Instead, the Defendants require the body shops to provide a limited lifetime guarantee on work performed. In the event additional work is required, the body shop is required to do so without any additional payment, or to indemnify the insurer for costs if work is performed at another shop.

6.10    Thus, while it may be a facially truthful statement that an insurer cannot guarantee the work of a particular shop, the clearly understood inference is that it can and will guarantee the work of another, favored shop, which is simply not true.

### Violations Of The Sherman Antitrust Act-Boycott

6.11    Defendants have engaged in group boycott by using their direct repair programs ("DRPs"), by engaging in concerted conduct with an agreement not to do business with a targeted individual or businesses, including the plaintiffs, or, only on certain agreed-upon terms.

6.12    Defendants, particularly State Farm, have engaged in an ongoing pattern and practice of coercion and implied threats to the pecuniary health of the individual Plaintiff businesses in order to force compliance with unreasonable and onerous concessions in their DRPs. Failure to comply results in either removal from the program(s) combined with improper "steering" of customers away from the Plaintiff's business, or simply punishment to decrease the

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

number of customers utilizing the Plaintiffs services.

## Violations of the Consumer Protection Act, RCW 19.86.030

6.13    Plaintiffs re-allege paragraphs 1.1 through 6.12 as if set forth fully herein for each cause of action below.

6.14    The Washington State Consumer Protection Act, RCW 19.86 provides in section 090:

> Any person who is injured in his or her business or property by a violation of [provisions of this Act] ... may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, increase the award of damages to an amount not to exceed three times the actual damages sustained...

6.15    RCW 19.86.030 provides: "Every contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is hereby declared unlawful."

6.16    Section 920 of the Act states:

> The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters.... To this end, this act shall be liberally construed that its beneficial purposes may be served.

6.17    The price-fixing, boycotting, steering, and exclusive dealing alleged herein as violations of the Sherman Antitrust Act, also violate the Washington Consumer Protection Act, RCW 19.86, *et. seq.*

## Violations of the Consumer Protection Act, RCW 19.86, *et. Seq.*

6.18    Similarly, RCW 19.86.020 provides: "Unfair methods of competition and unfair

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

6.19    RCW 48.30.010 specifically prohibits insurers from engaging in any unfair or deceptive acts or practices in adjusting claims:

> (1) No person engaged in the business of insurance shall engage in unfair methods of competition or in unfair or deceptive acts or practices in the conduct of such business as such methods, acts, or practices are defined pursuant to subsection (2) of this section.
>
> (2) In addition to such unfair methods and unfair or deceptive acts or practices as are expressly defined and prohibited by this code, the commissioner may from time to time by regulation promulgated pursuant to chapter 34.05 RCW, define other methods of competition and other acts and practices in the conduct of such business reasonably found by the commissioner to be unfair or deceptive after a review of all comments received during the notice and comment rule-making period.

6.20    WAC 284-30-390, enumerates many *per se* unfair and deceptive acts that are applicable to the defendants' misconduct, including:

> (1) Failing to make a good faith effort to communicate with the repair facility chosen by the claimant.
>
> (2) Arbitrarily denying a claimant's estimate for repairs…(b) If the insurer pays less than the amount of the estimate from the claimant's chosen repair facility, the insurer must fully disclose the reason or reasons it paid less than the claimant's estimate, and must thoroughly document the circumstances in its claim file.
>
> (4) Failing to prepare or accept an estimate provided by the claimant that will restore the loss vehicle to its condition prior to the loss.
>
> (6) Failing to consider any additional loss related damage the repair facility discovers during the repairs to the loss vehicle.

6.21    Defendants' conduct alleged herein violates these regulations defining conduct that is per se unfair or deceptive violates the Consumer Protection Act, RCW 19.86, *et.seq*.

6.22    In addition to the defendants' *per se* violations, Defendants' conduct alleged

COMPLAINT —Page 26 of 31

**OLIVE|BEARB, GRELISH & GILBERT PLLC**
1218 Third Avenue, Suite 1000
Seattle, WA 98101
P: (206) 629-9909
F: (206) 971-5081

herein was unfair and deceptive and violative of the Consumer Protection Act, RCW 19.86.

6.23     As a direct and proximate result, the plaintiffs have suffered economic harm.

### Recovery under the Doctrine of Quantum Meruit

6.23     Plaintiffs re-allege paragraphs 1.1 through 6.22 as if set forth fully herein for each cause of action below.

6.24     Plaintiffs both rendered valuable services and furnished materials to the Defendants by providing parts and labor in the repair of insured vehicles under Defendants' policies. Although DRPs were presented to the Plaintiffs as a mutually beneficial opportunity (i.e. in exchange for providing certain concessions of price, priority and similar matters, the individual Defendants would list the body shop as a preferred provider), in reality, the concessions demanded by the individual Defendants in exchange for the DRPs were not balanced by the purported benefits.

6.25     These services and materials were undervalued by the Defendants and paid at a rate below what the Plaintiffs were entitled.

6.26     As a result of this systematic undervaluation of parts and labor, the Defendants unduly profited.

6.27     Defendants' alleged conduct herein unjustly enriches the Defendants, and thereby the Plaintiffs are entitled to recover under the doctrine of quantum meruit.

### Recovery Under the Doctrine of Unjust Enrichment

6.28     Plaintiffs re-allege paragraphs 1.1 through 6.27 as if set forth fully herein for each cause of action below.

6.29     Plaintiffs conferred a benefit upon the Defendants by providing parts and labor in the repair of insured vehicles under Defendants' policies at a suppressed and undervalued rate.

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

6.30     These services and materials were undervalued by the Defendants and paid at a rate well below what the Plaintiffs were entitled.

6.31     Defendants knew they were receiving the benefit because they organized the scheme by which they could realize this benefit. By systematically suppressing labor rates, threatening to steer away business, and pressuring Plaintiffs to repair rather than replace parts, Defendants created a scheme by which they could realize unfair profits.

6.32     As a result of this systematic undervaluation, the Defendants were unjustly enriched.

**Tortious Interference With Business Relations**

6.33     Plaintiffs re-allege paragraphs 1.1 through 6.32 as if set forth fully herein for each cause of action below.

6.34     A valid contractual relationship existed between the Plaintiffs and the insurance-paying customers to repair the vehicles covered under Defendants' insurance policies.

6.35     Defendants knew of the relationship between the Plaintiffs and the insurance-paying customers as evidenced by the Defendants' payment of repairs.

6.36     Defendants interfered in the contract between Plaintiffs and the insurance-paying customers by undervaluing the Plaintiffs' parts and labor. The vast majority of the Plaintiffs' businesses are generated by customers for whom the Defendants are responsible to pay repair costs. The insurance-paying customers account for between seventy and ninety-five percent of each shop's revenue. By controlling this large of a share of Plaintiffs' businesses, undue pressure was put on Plaintiffs to repair vehicles by Defendants' standards. Plaintiffs were pressured to make business decisions, like whether to repair or replace parts, based on Defendants' standards rather than Plaintiffs' standards.

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

6.37    As a result, Plaintiffs were forced to breach their obligation to automobile owners to return vehicles to pre-accident condition, or performing labor and expending materials without proper compensation and thereby jeopardizing continuing viability of the business enterprise.

6.38    Similarly, Defendants interfered in the business expectancies of Plaintiffs. Plaintiffs had valid business expectancies for certain customers based on Plaintiffs' quality of work and reputation in the community. Defendants interfered with these expectancies by improperly "steering" customers away from the Plaintiffs' business because they were not a part of Defendants' DRP programs and/or not paying for certain repair procedures that Defendants found unnecessary.

6.39    As a result of this interference, the Plaintiffs suffered lost profits and reputational damage.

### Recovery for Conversion

6.40    Plaintiffs re-allege paragraphs 1.1 through 6.39 as if set forth fully herein for each cause of action below.

6.41    The Defendants willfully interfered with Plaintiffs' business profits by suppressing labor rates, controlling repair decisions, and steering business, as described above.

6.42    This interference had no lawful justification.

6.43    As a result of this interference, Plaintiffs were unable to fully realize their profits and were deprived of the true value of their labor.

### VII. PRAYER FOR RELIEF

7.1    As the proximate result of the foregoing, Plaintiffs has suffered and continue to suffer losses in an amount to be proven at trial.

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

WHEREFORE, the Plaintiffs, prays for the following relief:

A. Judgment against the defendants for violations of the Sherman Antitrust Act for Price Fixing/Suppression of Repair and Labor Costs;

B. Judgment against the defendants for violations of the Sherman Antitrust Act for Steering;

C. Judgment against the defendants for violations of the Sherman Antitrust Act for Boycotting;

D. Judgment against the defendants for violations of the Washington Consumer Protection Act, RCW 19.86, *et. seq*;

E. Judgment against the defendants for Quantum Meruit;

F. Judgment against the defendants for Unjust Enrichment;

G. Judgment against the defendants for Tortious Interference with a Business Relationship;

H. Judgment against the defendants for Conversion;

I. Judgment against the defendants for attorneys fees and costs as allowed by law, including RCW 19.86, *et. seq.*, the Sherman Act, and the Clayton Act, and any other permissible basis;

J. Punitive and treble damages against the defendants as allowed by law;

K. Pre and post-judgment interest as allowed by law;

L. For such other relief as the Court deems just and equitable.

//

//

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081

1

DATED this 7th day of November, 2014.

2

OLIVE|BEARB, GRELISH & GILBERT, PLLC

3

s/ Timothy A. Bearb
s/ Paul M. Veillon

4

s/ Joseph W. Moore

5

Timothy A. Bearb, WSBA #39300
Paul M. Veillon, WSBA #35301

6

Joseph W. Moore, WSBA #44061
Attorneys for Plaintiffs

7

1218 Third Avenue, Suite 1000
Seattle, WA  98101

8

P: (206) 629-9909
F: (206) 971-5081

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

OLIVE|BEARB, GRELISH & GILBERT PLLC
1218 Third Avenue, Suite 1000
Seattle, WA  98101
P: (206) 629-9909
F: (206) 971-5081